## John P. Olin et al., Appellees, v. George W. Reinecke and Harold J. Gilmore, Appellants.

## Gen. No. 31,612.

1. FIXTURES—*buildings on another's land as.* A lot owner who, through mistake on his own part, constructs a building on another's lot thereby makes it a fixture and part of such real estate.

2. BROKERS—*when responsibility to customer ceases.* The responsibility of a broker to his customer ceases when the latter procures his deed upon payment of the purchase price.

3. FIXTURES—*relief for placing buildings on another's land through mistake.* A lot owner who because of his surveyor's mistake is led to construct a building on another's lot next to his own lot, may not compel the other who was equally mistaken and did not in any way cause the mistake, to buy his improvement or as an alternative that the lot be sold and they accept the price received therefor after taking out the cost of improvements, but he will be given a deed to the lot upon which his building stands and will be compelled to deed his original lot to the other owner.

Appeal by defendants from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the third division of this court for the first district at the June term, 1926. Reversed and remanded with directions. Opinion filed October 19, 1927. Rehearing denied November 4, 1927.

**Statement by the Court.** This bill alleges *inter alia* that in April, 1921, John P. Olin purchased lot 33 in block 22 Southfield; that he by mistake improved lot 34, next to said lot 33; that he sold said lot 33 and improvements to complainants, Charles G. Melin and Augusta S. Melin, in March, 1922; that defendant, George Reinecke, purchased lot 34 in block 22, aforesaid, in June, 1922, and took title in the name of defendant, Harold J. Gilmore; that such purchase was in pursuance of a conspiracy to defraud complainants of their equitable rights in lot 34, block 22; prays for an accounting and that Gilmore convey to the Melins lot 34 in exchange for lot 33; that Gilmore convey

lot 34 to the Melins upon payment to him of fair value of lot 34 exclusive of improvements; that Gilmore convey lot 34 upon payment to him of purchase price of lot 34 with interest; or that Gilmore pay to Melins the fair value of the improvements on lot 34. Gilmore answered the bill and Reinecke disclaimed any interest in the property involved.

Gilmore first demurred generally, which demurrer was overruled. Gilmore in his answer denies all notice and conspiracy, alleges his purchase of outstanding contract of lot 34, payment of purchase price and receipt of deed, and claims ownership of lot 34 with improvements.

The cause was referred to a master, who heard the evidence and reported his conclusions thereon to the court, which report was approved after the overruling of objections and exceptions thereto.

The material findings of the master were as follows:

That in 1920, 1921 and 1922 William E. Harmon & Co., dealers in real estate, were agents of the owners of lots in Southfield subdivision; that Hubert O. Lane was a salesman and agent of Harmon & Co.; that defendant, Reinecke, was engaged in the real estate business with an office about two blocks from South-field subdivision; that Lane listed some lots with Reinecke to sell, and that in December, 1920, John P. Olin asked at Reinecke's office about vacant lots; that Reinecke and Olin went to Southfield subdivision; that there were few buildings in the subdivision; that walks were laid and the lot numbers were indented in the walks in front of the lots; that Reinecke told Olin that lot 33, thus marked, was for sale; that Lane testified that Reinecke produced Olin as a buyer and took a deposit, and then Olin came to the office and ordered the deeds; that "when one of those parties owning a lot desired to sell, that instead of letting him pay Harmon & Company and take his deed and deed it over to the buyer, they had the contract holder

fill out an assignment blank and that assigned his interest to the party buying, and then they ordered the deed and guaranty policy in that buyer's name, and as soon as that came through the buyer came in with his money and the balance due Harmon & Company was taken out and the deed turned over to the new buyer; that does away with having a second party on the record."

Walther held a contract for the lot purchased by Olin; that on April 9, 1921, the above procedure was followed and a deed of said lot 33, block 22, Southfield, was executed by Tyson, trustee, to John P. Olin and Hilma Olin, as joint tenants; that the deed was recorded April 27, 1921; that Olin listed the lot with Reinecke in April, 1921, but Reinecke did not procure a purchaser; that Olin decided to improve the property and employed Augustus Cavanna, a surveyor to survey lot 33; that the surveyor's plat showed the lot to be the one in front of which the figures 33 were indented in the walk; that Olin then erected on said lot a two-flat brick building and a two-car garage, at a construction cost of $11,890.22, cost of plans and specifications $75 and superintendence $600; that Olin borrowed $6,000 and executed a trust deed conveying lot 33; that on March 14, 1922, Olin and wife conveyed lot 33 to Charles H. Melin and Augusta Melin for a consideration of $14,000; on January 18, 1916, Harmon & Company sold lot 34 to Dick Bruening, under an instalment contract for $1,090, payable $11 per month; that on June 5, 1922, Bruening executed an assignment of said contract to the defendant Gilmore, and on the same day Lyman executed a deed of lot 34 to Gilmore, said deed was recorded July 6, 1922; that Melin took possession of the flat building and garage in March, 1922, and has been in possession ever since; that the flat building in question was constructed on lot 34 instead of lot 33; that the sidewalk impression "33" is 1.72 feet north of the south line of lot 34; that "32"

is .82 feet north of the south line of lot 33; that "34" is 1.02 feet north of the south line of lot 35; that "40" is in front of lot 40, but that none of the other sidewalk number impressions is in front of the lot of that number.

That in 1921 and 1922 Gilmore was a salesman for Hart, Schaffner and Marx; that he is a brother-in-law of Reinecke and had talked with Reinecke about buying a vacant lot in Southfield on which to erect a flat building; that in the spring of 1922 Reinecke showed him 10 or 20 vacant lots; that in June, 1922, Reinecke showed him 2 or 3 lots in Southfield; that Gilmore authorized Reinecke to purchase lot 34; that he saw the lot before purchasing it; that he had a few hundred dollars in the bank and owned some Hart, Schaffner & Marx stock; that he turned the stock over to his father under an arrangement whereby his father was to advance money necessary to purchase the lot; that he did not know whether his father gave Reinecke the money; Reinecke did not know the Olin building was on lot 34 until Gilmore's survey; that in July, 1922, Gilmore told Melin over the telephone that his buildings were on lot 34, and that Gilmore owned lot 34; that Melin told Olin, and Olin, Melin and Nelson, the mortgagee, met Reinecke, measured the lots and saw that the building was on lot 34; Olin told the surveyor Cavanna, who said it was his mistake; Cavanna offered Reinecke $500 to settle the matter, but Reinecke refused; Olin and Nelson called on Gilmore and offered $500 to settle and increased the offer to $1,000, which was refused. These offers of payment were admitted by the master as competent over objection of defendants. Reinecke was familiar with the lots in the subdivision, had made sales of lots there and made the original sale of lot 33 to Olin, that he and also Lane visited the premises while the building was being constructed, and knew that it was being constructed by Olin; that in June or July, 1922, Reinecke

asked Lane over the telephone what lots he had for sale and he quoted lot 34 in with the rest of them, some were $1,700, and 34 was $1,600; he told him that he had a deposit on lot 34. Lane called in Bruening, who owed about $400 on his contract; the following day Reinecke brought in the deposit. Bruening was there and the deal was closed. Bruening admitted that he saw the lot twice, the last time in 1920; that there were no improvements except the sidewalk; that he never knew there were any improvements "until the other night"; that neither Olin, Melin, Nelson or Cavanna knew that the building and garage had been erected on lot 34 instead of lot 33 until so informed by Gilmore through his conversation with Melin in July, 1922; that in June, 1922, Gilmore visited the subdivision and looked at the vacant lot adjoining Olin's building on lot 34, which Olin thought was on lot 33; that Gilmore looked at lot 33; that Gilmore assumed that $1,600 was the price of the lot at which he looked; that the deal was consummated for Gilmore through Reinecke, as his agent, on the theory that Gilmore was buying the vacant lot next to Olin's building; that Gilmore took title to it as a vacant lot; through error on the part of Lane acting for Harmon & Co. the deed to Gilmore did not describe the lot which Gilmore had personally inspected and selected, but it described lot 34 on which Olin had constructed the buildings in question. When Olin purchased his lot from Harmon & Co. he looked at the premises and picked out a vacant lot, and through error in the office of Harmon & Company and Mr. Lane, their agent, a deed was executed and delivered to Olin for a lot other than the one which he had examined and selected; that neither Olin nor Gilmore received a deed for the lot which he selected and agreed to purchase; that Bruening never had any legal title to lot 34 nor any equitable interest therein of which complainants had notice; that he never consummated his contract, that no deed was ever pred-

Olin v. Reinecke, 246 Ill. App. 184.

icated upon his contract; that Gilmore never ac-
quired any title from Bruening, but acquired title
direct from the owners under a contract made with
the owners through Reinecke and Harmon & Co. their
agents; that the owners who made the deeds to Olin
and to Harmon & Co. through their duly authorized
agents had knowledge of the improvements made by
Olin as they were being constructed on lot 34 instead
of lot 33; that they should have known that Olin was
placing them on the wrong lot; that they made no
objection or protest and are therefore estopped from
claiming any right or title to said improvements;
that Gilmore selected lot 33 after the improvements
were completed on lot 34 and he acquired no better
title nor greater rights in lot 34 which was conveyed
to him by mistake than those of Gilmore's grantors;
that Melin and his wife were in actual possession of
lot 34 and improvements when Gilmore selected lot
33; that Reinecke acted as agent for Gilmore and the
possession of Melin and wife was notice to both of
them; that neither Reinecke nor Gilmore made any
inquiry as to Melin's rights; that they had no reason
for making such inquiry because Gilmore selected lot
33, that Gilmore is not in law or equity entitled to
any more than he bought, a vacant lot.

From these findings the master recommended that
complainants should be given an equitable lien on
lot 34, block 22, Southfield, and improvements thereon
for $12,565.22, besides costs and expenses of this pro-
ceeding; concludes that defendant Gilmore should be
decreed to pay said sum to the clerk of the court,
and that the clerk out of said sum should pay to John
E. Nelson the mortgage indebtedness of $6,000 with
interest; the balance to Melin and wife; upon failure
of Gilmore and Reinecke to comply with such order
that lot 34, block 22, and improvements be sold free
and clear, and out of the proceeds Nelson be paid
the mortgage indebtedness and interest, and the bal-

ance of the proceeds of sale, after payment of said mortgage indebtedness, to the amount of the difference between said mortgage indebtedness and $12,565.22 and costs and expenses, be paid to Melin and wife, and the overplus, if any, should be paid to Gilmore. After said sale a conveyance of said lot 34 and improvements should be made.

HOAG & ULLMANN, for appellants; FREDERIC ULL-MANN and GEORGE M. BURDITT, of counsel.

ARTHUR H. CHETLAIN, for appellees.

MR. JUSTICE HOLDOM delivered the opinion of the court.

It appears from the foregoing statement that Olin built a two-flat building and a two-car garage on lot 34, which he did not own, under the belief that it was lot 33, which he did own.

A careful reading of all the evidence fails to disclose that Reinecke, Gilmore or any other of the persons involved in the original transaction, at any time did or said anything on which Olin acted in erecting his buildings on lot 34 instead of lot 33. There can be no doubt from the testimony that Olin honestly believed that he was building on lot 33, as was his intention.

Gilmore, who subsequently acquired title to lot 34, is not proven to have made any statement which would have induced Olin to build on lot 34, instead of lot 33, which he owned. There is no evidence, as we see it, that any statement was made by any party to this transaction to mislead Olin in building on the wrong lot. Reinecke told Olin when he was about to build to have the lot surveyed. Bruening held the contract for the purchase of lot 34 in 1916, and in the conveyance to Gilmore Bruening paid $400 due on his contract at the time Gilmore received his deed. It is

clear that the whole trouble here was that Cavanna, the surveyor, in making the survey for Olin, surveyed lot 34 instead of lot 33. In faith of the correctness of such survey Olin put his improvements on lot 34. In the faith of this survey being correct, Olin procured $6,000 on the mortgage of lot 33, which mortgage money was used in the construction of the two-flat building and the garages on lot 34. So far as this record shows every person interested believed that lot 33 was the lot improved and not lot 34; Gilmore had a survey made by the Chicago Guaranty Survey Company, and then for the first time discovered from that survey that the improvements made by Olin were on lot 34; at that time Gilmore had no knowledge of the improvements on lot 34 and called for a survey.

It is true that during all of the time after the erroneous survey by Cavanna, Olin or the Melins were in the actual possession of lot 34, and that such possession was notice to the world of their rights. The survey of lot 34 for lot 33 was a mistake of the surveyor, Cavanna.

The record clearly shows that Olin intended to purchase lot 33; Harmon & Company intended to and did deliver a deed to Olin of lot 33; that Olin requested a survey of lot 33 and that Cavanna intended to survey and mark the borders of lot 33, but instead by mistake surveyed lot 34, and marked it lot 33.

There does not appear in the record any fact which would warrant the conclusion that any of the parties conspired or did any fraudulent act which misled Olin, and Olin did not act upon any representation made by Reinecke or anyone else, which misled him or influenced him to erect his buildings on lot 34 instead of lot 33, except the survey of Cavanna made at Olin's request.

The buildings when constructed on lot 34 became and still are a part of the real estate. *Crest v. Jack,* 3 Watts (Pa.) 238, in which the court said: "If a stranger enter on the land of another and make im-

provements by erecting buildings, they become the property of the owner of the land. Were it not so, a person might gain a title by the commission of a trespass, and strip his neighbor of his estate, or subject him to compulsory expenses, under the pretext of improving his property. The foundation of property consists in its being an exclusive right: other persons cannot impair its enjoyment, or impose burdens on it by intermeddling with it without the owner's leave, or color of legal authority. * * * There are, however, cases, in which an owner of land standing by and permitting another to spend his money in improving it, has, in equity, been deemed a delinquent, and been compelled to surrender his right on receiving compensation, or else to pay for the improvement. But in these cases there is always some ingredient which would make it a fraud in the owner of the land to insist on his legal right. * * * To permit such a one to take advantage of the mistake would be revolting to every sentiment of justice. But on the other hand, I know no case where equity has, on the mere ground of silence, relieved one who is perfectly acquainted with his rights, or has the means of becoming so, and yet wilfully undertakes to proceed in expending money on the land of another without obtaining or asking his consent.''

There can be but little doubt that all the parties in interest, including the agents, knew that Olin was constructing his two-flat building and garage, but everyone assumed that he was doing so under the title which he held to lot 33. (*Green v. Biddle,* 8 Wheat. [U. S.] 1.)

In *Haggerty v. McCanna,* 25 N. J. Eq. 48, the court said complainant ''bases his claim to relief on the ground of mistake. But an error which is the result of inexcusable negligence, is not a mistake from the consequences of which equity will grant relief. The complainant's mistake in this case was in assuming,

as he says he did, from the fact that his wife had administered on McCanna's estate, that she was the owner of the lots of land in question.   He appears to have made no inquiry whatever on the subject.   On the argument it was urged that on the ruling of this court in *McKelway v. Armour,* 2 Stockt. 115, the relief sought might be granted.   But the decision in that case was expressly put on the ground of the complainant's mistake as to the location of a vacant lot, plotted out on a map only, a mistake which the court said was one which might occur to the most careful and diligent man, and the fact that the defendant stood by and participated in the mistake, which latter consideration was regarded as a most important feature in the case.   *   *   *   No relief can be afforded him on the ground of mistake.''

*Kirchner v. Miller,* 39 N. J. Eq. 355, is a case similar to the one at bar arising on a mistake, and the court said:   ''The principle of the case is that where one by mistake puts improvements on another's land mistaking it for his own, equity will, in a proper case, compel the latter to sell and convey the land to the former, at a price to be fixed by the court, unless he will consent to pay for the improvements.   The exercise of such a judicial power, unless based on some actual or implied culpability on the part of the party subjected to it, is a violation of constitutional right.''

While it is hard not to believe that Reinecke and Gilmore knew that Olin, for some reason unknown to them, had built on lot 34, yet there is no evidential fact in the record from which a court could hold that Reinecke and Gilmore conspired together to defraud Olin of his rights in lot 34, and by so conspiring and acting together they were guilty of actual fraud, as contended for by complainants.   There may be a grave suspicion that they knew of the mistake made by Olin, but there is no evidence from which this court can

conclude that Reinecke and Gilmore were guilty of conspiring together to defraud Olin of his rights.

It is insisted that Reinecke and Gilmore remained silent when they should have spoken. However this may be, it is clear that no party to this suit knew, until Gilmore procured a survey of lot 34 after his purchase, that Olin, who owned lot 33, had mistakenly built upon lot 34. None of the defendants stood in a fiduciary relationship to Olin, at any time, except Reinecke, who was the agent of the seller of lot 33, and negotiated the purchase by Olin. When that transaction was closed and Olin procured his deed on payment of the purchase price, Reinecke's responsibility to Olin ceased. There was never a time, in law, thereafter that Reinecke or Gilmore were obligated to warn or advise Olin as to his rights or to tell him to desist from building on lot 34. That is patent from the fact that none of the parties knew that Olin was building on lot 34 until after the buildings were completed and in the possession of the Melins.

If complainants are entitled to relief they are certainly not entitled to the alternative relief given by the decree. The utmost that a court of chancery could decree on the facts of this case would be that Gilmore be directed to convey lot 34 to complainants, the grantees of Olin, and that complainants be decreed to convey to Gilmore lot 33. Lots 33 and 34 are of the same dimensions; they adjoin each other; so far as can be gathered from the record, they are of about equal value. Olin was not guilty of any conscious dereliction in building upon lot 34, but that his so doing rested solely on the fact that his surveyor, Cavanna, surveyed lot 34 when he was told to survey lot 33, and reported to Olin that lot 34, which he did survey, was lot 33. That is the crux of the whole trouble, Olin's grantees being from any view point absolutely innocent in the transaction.

Gilmore, so far as the proofs show, cannot be penalized by being compelled to pay for the improvements placed by Olin upon lot 34; that would be highly inequitable and unjust because in Gilmore's financial condition he might be unable to perform the financial part of the decree.

It is our opinion that the rights of the parties will be more equitably preserved by the Melins conveying to Gilmore lot 33, and Gilmore conveying to the Melins lot 34, and that the mortgage on lot 33 above recited, be transferred and attached to lot 34, and released from lot 33, and that all the parties execute appropriate conveyances to each other for that purpose.

The decree of the circuit court is therefore reversed and the cause is remanded with directions to the circuit court to enter a decree requiring each of the parties, the Melins and Olin, to make, execute and deliver conveyances of lots 33 and 34 as above recited, and that in default of their so doing within 30 days after the entry of such a decree, that a master in chancery of the court be directed to make such conveyances in the name and on behalf of either of the parties who may in this regard fail to make such conveyance or conveyances as may be directed to be made by the decree to be entered by the circuit court in pursuance of and in conformity with the directions in this opinion contained.

*Reversed and remanded with directions.*

TAYLOR, P.J., and WILSON, J., concur.